Good morning. May it please the court, Jonathan Libby appearing on behalf of the appellant Javier Anaya-Acosta. And I thank the court for accommodating my schedule this morning. Your Honors, the reason Mr. Anaya was free to walk the streets of Los Angeles at the time of his arrest was solely because the government of the United States ordered him to be here. And it ordered him to be here because it needed his help. Well, we ordered him to be here or suspended the order of removal temporarily because we needed his testimony. It ordered him to be here, Your Honor. It's a departure control order which basically suspends the immigration judge's deportation order and that allows him to remain until such time as we release him to execute the departure. That's what we've got to wrestle with, right, Mr. Libby? Well, of course, the departure control order can be issued to someone who's not necessarily in order, removed. But in this particular case, your client was under a removal order, was he not? Correct. He had been granted voluntary departure or an alternative. So the effect of the departure control order was simply, in essence, to suspend the obligation to depart immediately, but he was still under order of removal. That's certainly true. Okay. That's certainly true. However, it lacks common sense to suggest that someone who has been ordered. My question or the departure control order? No, no, no. No, no, no. To suggest that he's been ordered to be here when to say that he's here lawfully. Well, that's the issue we have to decide. Is there a change in his status simply from the issuance of a departure control order? Does he somehow acquire lawful status that he otherwise doesn't have when he's under the departure order? Well, I'm not sure I necessarily put it that way. Clearly, his status was still the same. Well, let's not get lost in definition. Sure. Could you just tell us the facts as you understand him to be here? The key facts that you want us to understand here, so we can understand then why you conclude that he's lawfully here. Well, the facts are Mr. Nycosta has agreed to voluntarily depart the country. He was in detention, immigration detention. No, he was ordered deported. He was granted voluntary departure. Yes, but before that, he was ordered deported but granted voluntary departure. As an alternative, if he failed to voluntarily depart, then he would have removal. Right, the removal. Okay. And what was the ground for the removal? His unlawful presence in the country. It was... Okay. He had been removed before. He had not been removed before. He had actually been brought here when he was two years old, but he had never been granted legal permanent status. He had no status. Correct. And that was the basis of being granted the voluntary departure as opposed to being ordered deported. Okay. So he was in official detention, in immigration detention, awaiting to voluntarily depart when an LAPD detective contacted the government and said we need him to testify in a criminal case. And so a departure control order was issued by Immigration and Customs Enforcement, which ordered that Mr. and I not leave the country and that no one could permit him to leave the country. And at that point, he was then released into the custody of the LAPD detective. Was there a time, was there an event that was contained in the order? Under the language of the order, it is a temporary order, but it is until the government determines that you no longer are needed. His presence is no longer needed. Correct. So the government had made a determination, the Attorney General essentially or the Secretary of Homeland Security essentially had made the determination that his presence was necessary here. So it was in essence don't follow the, don't implement the order of voluntary departure or deportation because we need him temporarily here. Essentially, yes. I mean, they said you cannot leave. Even if you want to, you cannot leave. And so he didn't leave. Well, he's supposed to stay in detention. Well, he was released from detention. He was released from detention to the custody of the LAPD detective, and he was then free to walk the streets of Los Angeles. If the departure control order had never been requested, would he have simply been placed on a bus from INS detention and sent back to Mexico? Correct. So he would never have been free to walk the streets as he was doing on the night of his arrest. That's true. However, of course, if he had been permitted to voluntary depart, the moment he stepped across the border to Mexico, if the government then needed his presence here to testify, then they needed to parole him into the country to do so. Assuming that he was willing to come back. That's right. Well, I mean, he was willing to testify, and he testified, and the prosecution ended up being successful for the government. There was no issue about his agreeing to testify. And had he simply been permitted to depart, he would have then had to have been paroled into this country. And, of course, under the law, there's no question, there's no debate. Had he been paroled into the country, then he would not have been here unlawfully or illegally. Of course, if he had come back after he had been deported, he would no longer be under the removal order because it would have been executed. And this would be a new admission under a grant of parole. Well, technically, it would not have been an admission, and that's where the immigration laws, they're all sorts of legal fictions, but he actually would not have been admitted. And it's our position that... But he would no longer have been under the, I'll call it jurisdiction, I'm not sure that's the right word, the reach of the prior removal order. No, he would then be under the reach of the temporary parole order, which is no different than the departure control order, which then you can't leave. Well, it is different. It is different because the departure control order doesn't get issued unless you are under some obligation to leave the country. Not at all. Whereas a grant of parole is the sovereign's permission to come back into the United States because we need you for something else. A departure control order can be issued to a lawful permanent residence who is not in removal proceedings. Yeah, but we don't issue departure control orders for people who are outside the United States. That's the difference. That's true. That's the difference between parole and a departure. Let me ask you this. He was arrested for being an illegal alien in possession of a firearm. Is that the crime that... That's the crime that we're dealing with here, yes. Is it clear that if he were paroled into the country for purposes of being a witness, that he could carry an illegal firearm and would not violate the statute? It is clear, even under what the government argues, that he would not have been, because he could not, under the legal fiction, would not have actually been admitted to the country. He would not have been here illegally or unlawfully under the immigration statutes. So whether he should be able to possess a gun, I mean, that's a policy question, but as a matter of law, would he be... He wouldn't have violated the statute. He would not have violated the statute. And so it's our position that essentially parole, the temporary parole, or the departure control order is the same thing. Except that we've got an ATF regulation that deals with the 924 violation that addresses the very situation of an alien who is found in possession of a firearm, correct? I mean, that's what the district court looked to in trying to... Correct. It's our position that the ATF regulation is not entitled to the amount of deference that the government suggests it is. The government suggests it's entitled to full Chevron deference, but since this is a criminal statute, case law is actually not very clear on whether or not deference is entitled when you're dealing with a criminal statute. So it's our position that you cannot, in fact, look to the ATF regulation to define exactly what illegally or unlawfully... Have the previous panels given deference to the ATF's interpretation of this, Rick? In some situations. In some situations, but not in all situations, not broadly. And certainly not in this situation, because this situation has never come up before. Well, as I understood your argument, your argument was ATF is not immigration, it's not the Department of Homeland Security. So it's not competent to make regulations affecting aliens. The problem is that Congress has enacted a firearm statute that addresses and makes criminal the possession of firearms by illegal aliens. Yes, and they failed to define whether that illegal alien, when he's unlawfully or illegally here, which would be an immigration determination. Okay, I think we're back to where we started. Exactly. All right. Thank you. And I'll reserve the rest. Well, you don't have any more time on the grid. I apologize. If we have any questions, call us. Thank you, I appreciate it. May it please the Court, Assistant United States Attorney Jennifer Resnick for the United States. It seems as though the defense has conceded that he was under an order of removal and that that order of removal prevented him from carrying a gun before the departure control order was put in place. We put that aside for a second. Well, wouldn't he have been in violation of the statute if he had simply been here illegally and caught in possession of the firearm? Yes. With regard to proceedings? Correct. He had entered without inspection. He was here illegally. And even before those proceedings took place, he would not have been allowed to carry a gun. And the proceedings did take place, so he was under that order of removal and still was not allowed to carry a gun. And the government's position is that it doesn't make sense to say that now that he became a material witness and the government needed him to stay temporarily, he somehow gains the right to possess a gun. It doesn't make sense. Was he technically still in the custody of the LAPD? There was a detainer placed on him. And from the record it appears that the LAPD detective was supposed to be watching him, but he was not in any official custody. Right. You mean he wasn't physically in custody. He wasn't physically in any local jail. Because I understand, this happened, he was here for a long time. He was. It appears that the state case got continued several times, Correct. And that's why he ended up staying here longer, temporarily, but longer than may have been anticipated in the beginning. But going to the difference between parole and departure control order, there is a clear difference, which I think this court has recognized in other cases, between something like parole and departure control order. And even though the cases don't specifically mention departure control, in Ortega-Cervantes this court discussed legal meaning of parole, specifically 212D5 parole, and recognized that there is a difference between temporary parole and conditional parole, which is more similar to the departure control order in certain respects. And the court there said that even if the government could have temporary paroled an alien in, they didn't. They conditionally paroled him in, and we can't just make assumptions and treat an alien as if he had been under temporary parole. And I think we have the same situation here, that we can't treat this defendant as though he had been paroled into the country. Parole has very specific meaning. There are certain processes that must take place, namely inspection before the alien is allowed to enter the country under parole. There are certain rights that are conferred to somebody who is on parole. And there's nothing in Regulation 215.2, which talks about departure control orders, that conveys these same rights at all. Actually, nothing in 215.2 conveys any legal status, let alone the right to possess a firearm. So the government's position is that these are completely different, and we cannot treat them as though they were the same. As far as the deference that's owed to the regulation, 478.11, this court has repeatedly given Chevron deference to this regulation in the past in U.S. v. Latu and U.S. v. Bradley McKees and in U.S. v. Lopez-Perera. And there were no limitations set on the deference, and those cases dealt with criminal cases. So there's no reason that this case should be any different. The court should give the regulation Chevron deference because we don't have any guidance from the statute itself. Well, it's possible that the defendant could have been paroled, and if he was paroled according to the regulation, he may have been able to carry a gun. That's not our situation here. And so we should look to Subsection A and Subsection D, and he clearly was here unlawfully according to those subsections. So the only order that really is of any measure here is the order of removal. That's the only order that has any bearing on his legal status, and clearly he was here unlawfully and did not have the right to possess a gun. Does the court have any questions? No. Thank you. Thank you. Are there any questions of the appellant? No. Thank you. The case just argued is already submitted. We'll hear the next case, Der Sekissian v. Holder.
judges: Jarvey, Schroeder, Tallman